UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| VICTOR A. SALAZAR, JR., | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | CAUSE NO. 3:11-CV-113 RM |
| vs. | ) | |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER

Victor A. Salazar, Jr., a *pro se* prisoner, filed a habeas corpus petition challenging a disciplinary sanction imposed by a hearing officer at Indiana State Prison ("ISP") under cause number ISP 10-12-0055. The charges were initiated when case manager Kyle Moore prepared a conduct report charging Mr. Salazar with unauthorized possession of an electronic device. The conduct report stated as follows: "On 12-8-2010, I, Kyle Moore, caseworker manager of BCH, delivered to offender Salazar #128745 legal mail at approximately 12:55 p.m. On inspection of said legal mail two cell phones were discovered in the brief." On the same date, Officer Y. Ashley prepared the following witness statement: "At approximately 12:15 p.m. case manager Kyle Moore placed legal items in a container to be scanned. I (Ofc. Ashley) noticed the items inside the envelope shaped like cellphones. I (Ofc. Ashley) showed case manager Kyle Moore the items on the screen. Case manager Kyle Moore contacted internal affairs and left with the envelope."

Mr. Salazar was notified of the charge and was given a copy of the conduct report. He pleaded not guilty and declined the assistance of a lay advocate. He requested witness

statements from Sergeant D. Draper, Officer W. Hoffman, Mr. Moore, and offender T. Terry. He also asked for the following physical evidence: (1) a copy of all papers contained in the legal mail that was sent to him; (2) photographs of what was found; and (3) a fingerprint analysis of the envelope.

Statements were obtained from Mr. Salazar's requested witnesses. Sergeant Draper provided a statement as follows: "On 12/8/10 Salazar #128745 was in the office . . . to pick up legal mail. Once in the office he was asked to sign[] for his legal mail, which he did. When presented with the mail he said that it wasn't his, because it was from the wrong county." A few days later Sergeant Draper provided a second statement clarifying that according to his recollection Mr. Salazar "denied the package before it was opened." Offender Terry provided the following statement: "I received a package from an unknown person and have no understanding as to why." Officer Hoffman provided a statement indicating simply, "[R]eport stands as written."

The hearing officer also obtained a statement from Bill Lessner, the internal affairs investigator, who stated as follows:

> On 12/8/10, Case Manager Kyle Moore called AI and talked with Inv. Lessner. Moore said he had legal mail that contained a cell phone. Moore asked if I would come to BCH. In the afternoon, Lessner went to BCH, Unit Team Office. In the office was Sgt Draper, Case Manager Moore. I was told that Victor Salazar #128745 had legal mail from an address in Crown Point. Salazar came to the office, looked at the sheet for legal mail signature and signed it. Moore the[n] started to open the legal mail. Salazar watch[ed] as Moore tried to open the pages of the legal mail. Salazar then said that it was not his and it was a set up. He said he did not get legal mail from Crown Point. Salazar then crossed off his signature on the paper for legal mail. In the legal papers were 2 cell phones and chargers.

Mr. Moore also provided the following additional statement: "When Mr. Salazar came into the office to pick up legal mail he signed for it in front of Sgt. Draper, Bill Lessner, and myself. After I told him he was in trouble for trying to receive cell phones in legal mail, then he denied it was his. Mr. Salazar went so far as to try to scratch out his name on the legal mail list."

Before the hearing, Mr. Salazar submitted a statement to the hearing officer denying knowledge of what was in the package. He stated that he got a lot of legal mail and that he routinely "would sign without looking at where its coming from."

A disciplinary hearing was held. Mr. Salazar said the package was sent to him without his knowledge. The hearing officer found Mr. Salazar guilty based on staff reports, evidence from witnesses, and the physical evidence which included the evidence card, photographs of the cell phones, and the legal mail receipt. She imposed a two-week restriction on phone privileges and a 15-day loss of earned time credits. Mr. Salazar's appeal to the facility head was denied. He then appealed to the final reviewing authority, who added the charge of "conspiring with another" without imposing any additional sanction.

When prisoners lose earned time credits in prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written

statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 564-566 (1974). To satisfy due process, there must also be "some evidence" in the record to support the hearing officer's determination. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Mr. Salazar first claims that there was insufficient evidence to support the hearing officer's finding of guilt on the possession charge.[1] In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Supt. v. Hill, 472 U.S. at 455-56 (emphasis added). A court overturns a hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." Henderson v. United States Parole Comm'n, 13 F.3d 1073, 1077 (7th Cir. 1994).

There is sufficient evidence to support this hearing officer's determination, including the conduct report in which Mr. Moore stated that he found the cell phone in mail addressed to Mr. Salazar, and the statements of witnesses that Mr. Salazar signed for the

---

[1] The IDOC Adult Disciplinary Procedures define the offense of "Possession of Electronic Device" as follows: "Unauthorized alteration, use or possession of any electronic device, including but not limited to: computer, computer software, cellular telephone, pager, PDA, computer disk, CD/DVD, recording tape (audio or video) or associated hardware."

package. *See* <u>Moffat v. Broyles</u>, 288 F.3d 978, 988 (7th Cir. 2002) (witness statements constituted some evidence); <u>McPherson v. McBride</u>, 188 F.3d at 786 (7th Cir. 1999) (conduct report alone provided some evidence to support disciplinary determination).

Mr. Salazar acknowledges in his traverse that he signed for the package. He says he did so because he had been "manipulated and conditioned" by Mr. Moore to sign for his legal mail without looking at it, but there is evidence in the record that Mr. Salazar looked at the package, signed for it, and didn't deny it was his until after it became apparent that the contraband had been discovered. As Mr. Salazar points out, Sergeant Draper recalled that Mr. Salazar said the package wasn't his before it was opened, but that doesn't undercut the other witnesses' statements that Mr. Salazar signed for the package and didn't disavow it until some later point. To the extent there is a discrepancy between the witness statements, the hearing officer, and not this court weighs the evidence and decides the relative credibility of the witnesses. <u>McPherson v. McBride</u>, 188 F.3d at 786. The hearing officer decided to credit the witnesses who stated that Mr. Salazar looked at the package and signed for it, only denying it was his when it became apparent the cell phones had been discovered. There is adequate support in the record for this determination.

Mr. Salazar also suggests that the evidence was insufficient because there was no direct evidence that he had instructed someone to mail him the cell phones. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. at 556. The hearing officer wasn't required to find Mr. Salazar's guilt beyond a reasonable

doubt or believe his exculpatory evidence; due process was satisfied as long as her determination was not arbitrary. *See* <u>Supt. v. Hill</u>, 472 U.S. at 457. As already recounted, there was evidence that Mr. Salazar signed for and accepted the package, which was addressed to him and contained legal papers with his name on them. This circumstantial evidence is sufficient to satisfy due process. *See* <u>Id</u>. (evidence was sufficient even though it was "meager" and there was no direct evidence of guilt); <u>Hamilton v. O'Leary</u>, 976 F.2d 341, 345 (7th Cir. 1992) (constructive possession provided some evidence of guilt); <u>Meeks v. McBride</u>, 81 F.3d 717, 721 (7th Cir. 1996) (circumstantial evidence of guilt satisfied some evidence standard). Accordingly, the court denies this claim.

Mr. Salazar next claims that the hearing officer's written statement was inadequate. A prisoner is entitled to a written statement by the fact-finder of the evidence relied on and the reasons for the determination. <u>Wolff v. McDonnell</u>, 418 U.S. at 566. The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." <u>Scruggs v. Jordan</u>, 485 F.3d 934, 941 (7th Cir. 2007). In reaching her decision, the hearing officer stated that she was relying on staff reports, witness statements, the evidence card, photographs, and the legal mail receipt. She further stated, "Base[d] on the conduct report and all staff statements the offender did sign for the legal mail, which means he take[s] responsibility for what [is] in it. Base[d] on this I find him guilty." This statement wasn't lengthy, but it adequately articulated her reasoning. She determined that there was adequate evidence of possession because Mr. Salazar signed for and accepted the legal mail containing the cell

phones. The written statement the hearing officer provided satisfied due process, so the court denies this claim.

Mr. Salazar next claims that his rights were violated when the final reviewing authority added the charge of "conspiring with another" on appeal.[2] He argues that the final reviewing authority's actions denied him the right to mount a defense. In <u>Northern v. Hanks</u>, 326 F.3d 909 (7th Cir. 2003), the court of appeals rejected a similar argument made by an Indiana inmate. Mr. Northern was charged with conspiracy and bribery in connection with an investigation revealing that he and two other inmates were smuggling tobacco into the facility. <u>Id.</u> at 909-910. Before to the hearing, he was given a copy of the investigation report detailing the factual basis for the charges. <u>Id.</u> at 910. Mr. Northern was found guilty by a disciplinary board, but on appeal the reviewing authority decided that the facts more appropriately supported a finding that Northern had committed "attempted trafficking." <u>Id.</u> He modified the charge accordingly, without changing the sanction that had been imposed. *Id.*

Mr. Northern filed a federal habeas petition claiming that the reviewing authority's action violated his due process rights because it denied him adequate notice of the charge and prevented him from mounting an appropriate defense. <u>Id.</u> The court of appeals rejected this argument because Mr. Northern had been given a copy of the investigation report, which "inform[ed] him of the facts underlying the charge." <u>Id.</u> The court of appeals

---

[2] The IDOC Adult Disciplinary Procedures defines the offense of "Conspiracy/Attempting/Aiding or Abetting" as follows: "Attempting to commit any Class B offense; aiding, commanding, inducing, counseling, procuring or conspiring with another person to commit any Class B offense."

concluded, "Because the factual basis of the investigation report gave Northern all the information he needed to defend against the trafficking charge, the reviewing authority's modification did not deprive Northern of his due process rights." Id. at 911. In other words, when an inmate is sufficiently notified of the factual basis for a charge, he is also on notice that he could face another charge based on the same set of facts. Id.; *see also* Holt v. Caspari, 961 F.2d 1370, 1373 (8th Cir.1992) (prison disciplinary committee did not deny petitioner due process by elevating charge from "possession of contraband" to "possession of dangerous contraband" because the factual basis for both charges was the same); Boyd v. Anderson, 265 F. Supp.2d 952, 962-63 (N.D. Ind. 2003) (no due process violation where superintendent altered charge from possession of escape paraphernalia to unauthorized possession, removal, or relocation of property, where charges had the same factual basis).

Mr. Salazar was given a copy of the conduct report which detailed the factual basis for both charges: his receipt of legal mail containing cell phones. The conduct report gave him all the information he needed to defend against the conspiracy charge, and he had the same interest in defending against both charges, as both were B-level offenses. Mr. Salazar doesn't indicate what additional witnesses or evidence he would have sought to present to defend against the conspiracy charge. His defense to the possession charge — that he hadn't directed anyone to send him the package — applied equally to the conspiracy charge. Although prison officials rejected Mr. Salazar's defense, there was ample basis for them to do so. Accordingly, Mr. Salazar is not entitled to habeas relief on this claim.

For the reasons set forth above, the court DENIES the petition (DE 1).

SO ORDERED.

ENTERED: January  12 , 2012.          /s/ Robert L. Miller, Jr.
                                    Judge
                                    United States District Court


cc: V. Salazar, Jr.
    P. Moran-DAG